PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**February 26, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>JAMES LEROY LEHMAN<br>TAMARA LYNN LEHMAN,<br><br>Debtors. | Case No. 08-42733<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

THIS MATTER came before the Court on February 3, 2009, on an Objection to Exemption filed by the Chapter 7 Trustee (Trustee) for the estate of James and Tamara Lehman (Debtors). At the hearing, the Court tentatively ruled in favor of the Trustee, but provided the Debtors with the opportunity to submit additional briefing in support of their position. The Debtors filed a supplemental letter with the Court and corresponding attachments on February 10 and 11, 2009. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

**I**

**FINDINGS OF FACT**

The Debtors own a home located at 23922 Z Place, Ocean Park, Washington (Property). The Property is listed on the Debtors' Schedule A with a value of $200,000 and a loan balance of $109,823.44. On Schedule C, the Debtors claim the equity in the Property

MEMORANDUM DECISION - 1

exempt under RCW 6.13.010, .020 and .030. The residence on the Property was apparently damaged by a storm prepetition. Two months prior to filing bankruptcy, the residential owner's insurance carrier paid the Debtors $5,800 for storm damage to the home's roof. The Debtors deposited the check into an account at Great Northwest Federal Credit Union (Account). The Debtors' paychecks were also transferred into this Account by direct deposit, and funds were withdrawn from the Account by the Debtors to pay household expenses.

On Schedule C, the Debtors claim an exemption in the amount of $200, in funds held in a checking account at Great Northwest Federal Credit Union under RCW 6.15.010(3)(b), and in the amount of $5,800 held in the Account under RCW 6.13.070 described as "holding proceeds from insurance for roof storm damage." The Trustee objects to any claim of exemption under RCW 6.13.070.

## II

## CONCLUSIONS OF LAW

The Trustee argues that the Debtors are not entitled to an exemption of $5,800 in the Account under RCW 6.13.070, because the insurance proceeds were not placed in a segregated bank account and were commingled with other non-exempt funds. According to the Trustee, the funds lost their exempt status. At the hearing held on February 3, 2009, the Court tentatively agreed with the Trustee and orally ruled that the Debtors were unable to exempt the insurance proceeds. Utilizing the "first in, first out" tracing methodology adopted by the bankruptcy court in In re Burke, 2005 Bankr. LEXIS 1886 (Bankr. D. Or. August 2, 2005), the Trustee provided evidence that more funds were withdrawn from the Account than had been originally deposited in the form of the insurance proceeds. Thus, the Debtors were unable to trace any of the current funds on deposit to the insurance proceeds.

MEMORANDUM DECISION - 2

After further consideration of the Burke case, the Court finds it to be distinguishable. The issue in Burke was the ability of a debtor to claim an exemption under Oregon law in an earned income tax refund that had been commingled with non-exempt funds. The bankruptcy court determined that the funds at issue retained their exempt status to the extent that they were traceable and utilized the "first in, first out" method to trace the funds. Burke, 2005 Bankr. LEXIS, at *11. The distinction between that case and the one before the Court is the language of the respective state statutes.

In Burke, the Oregon statute specifically provided that a debtor may exempt "the debtor's right to receive an earned income tax credit under the federal tax laws and any moneys that are <u>traceable</u> to a payment of an earned income tax credit under the federal tax laws." ORS 18.345(1)(n) (emphasis added); Burke, 2005 Bankr. LEXIS, at *7. The Washington state statute at issue in the case before this Court provides:

> The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, and proceeds from insurance covering destruction of homestead property held for use in restoring or replacing the homestead property, up to the amount specified in RCW 6.13.030, shall likewise be exempt for one year from receipt, and also such new homestead acquired with such proceeds.

RCW 6.13.070.

Thus, unlike the Oregon statute in Burke, the Washington statute does not contain an explicit requirement that the funds at issue be "traceable." The only limitations set forth in RCW 6.13.070 are the amount exempt, that the funds be proceeds from insurance covering the destruction of homestead property held for use in restoring or replacing homestead property, and the duration that such funds shall be exempt - one year from receipt.

The Trustee, as the party objecting to the Debtors' claim of exemption, has the burden of proving the exemption is improper. Fed. R. Bankr. P. 4003(c). The Trustee has not

MEMORANDUM DECISION - 3

provided, and the Court is unaware of any Washington State case resolving this issue. The Court therefore examined case law from other jurisdictions interpreting similar homestead statutes. For example, in Keleher v. Technicolor Gov't Svcs., Inc. (In re Keleher), 829 F.2d 691 (8th Cir. 1987), the Eighth Circuit addressed the issue of whether proceeds from the sale of homestead property lost their exempt status under South Dakota law simply because they were commingled with non-exempt monies in a savings account. As in Washington, the South Dakota statute does not contain an explicit requirement that the funds be held in a separate account or traceable. The Eighth Circuit reversed the lower court and determined that the homestead proceeds did not lose their exempt status when commingled with non-exempt funds. Keleher, 829 F.2d at 693.

Homestead exemption laws are favored in Washington State and are to be liberally construed. First Nat'l Bank of Everett v. Tiffany, 40 Wn.2d 193, 202 (1952). Although some states have chosen to explicitly include a tracing requirement in their homestead statutes, the Washington legislature has not chosen to add such language to RCW 6.13.070. Compare, A.R.S. § 33-1101(C) (allowing exemption for 18 months in "identifiable cash proceeds"); In re Foreacre, 358 B.R. 384, 389 (Bankr. D. Ariz. 2006) (interpreting A.R.S. § 33-1101(C) to require the proceeds be kept in a separate account and not commingled); C.R.S.A. § 38-41-207 (2000) (providing that the proceeds from the sale of the homestead are exempt for up to two years after sale if kept in a separate account and identifiable); and In re Polimino, 345 B.R. 708, 711 (10th Cir. BAP 2006) (stating that C.R.S.A. § 38-41-207 exempts proceeds from the sale of the homestead if kept in a separate account).

RCW 6.13.070 does not contain a requirement that the insurance proceeds be traceable or kept in a separate account in order to maintain an exempt status. All that is

required is that they be received from insurance proceeds for the destruction of homestead property and held for use in restoring and replacing homestead property. If so, they will remain exempt whether commingled, for one year. There is no allegation that the funds at issue do not otherwise qualify as exempt funds. The Trustee's objection to exemption is therefore denied.

DATED: February 26, 2009

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 5